## PEOPLE *v.* KEELEY.

1. COMMERCE — REGULATION — INTERSTATE COMMERCE — CONSTI-
TUTIONAL LAW—STATES.
   Under the Federal Constitution (art. I, § 8, subd. 3) congress
   is vested with the power to regulate commerce among the
   several States.

2. SAME—INTOXICATING LIQUORS—TRANSPORTATION.
   Intoxicating liquor, being an article of commerce, its trans-
   portation from State to State is subject to such regula-
   tions as congress provides.

3. SAME—REED AMENDMENT—WEBB-KENYON ACT—FEDERAL STAT-
UTES.
   By the Reed amendment to the postal service appropriation
   act for the fiscal year 1918 (chap. 162, § 5, Act March 3,
   1917, 39 U. S. Stat. p. 1069, U. S. Comp. Stat. 1916, § 8739a),
   congress restored to intoxicating liquors its interstate
   commerce character, of which it was divested by the Webb-
   Kenyon act (chap. 90, 37 U. S. Stat. p. 699, U. S. Comp.
   Stat. 1916, § 8739).

4. INTOXICATING LIQUORS—CRIMINAL LAW—FEDERAL STATUTES—
COMMERCE—STATE STATUTES—JURISDICTION.
   The illegal transportation of intoxicating liquors from the
   State of Ohio into the State of Michigan, being in viola-
   tion of the Reed amendment, is punishable thereunder, and
   a conviction of defendant of said offense under the State
   law (section 57, Act No. 53, Pub. Acts 1919) is void.

Exceptions before judgment from Jackson; Wil-
liams (Benjamin), J. Submitted October 14, 1920.
(Docket No. 110.) Decided March 30, 1921.

James J. Keeley was convicted of violating the
liquor law. Reversed, and defendant discharged.

On Constitutionality, construction and effect of Webb-Kenyon
Act, see notes in L. R. A. 1916C, 299; L. R. A. 1917B, 1229.

*John F. Henigan,* for appellant.

*Alex. J. Groesbeck,* Attorney General, *M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

SHARPE, J.   The defendant was convicted under an information charging in the first count that on the 6th day of October, 1919, he did "unlawfully import" 15½ gallons of whisky into the city of Jackson from Newark, in the State of Ohio, and in the second count that he did "unlawfully transport" said liquors into Jackson from said city of Newark.   The charge was laid under Act No. 338 of the Public Acts of 1917, known as the Wiley act, as amended by Act No. 53 of the Public Acts of 1919.   Section 57 of the amended act reads:

"It shall be unlawful for any person to import, ship, sell, transport, deliver, receive or have in his possession any intoxicating liquors except as in this act provided."

Defendant's counsel moved for his discharge for the reason, among others, that the shipment, if made, was an act of interstate commerce and punishable under the Federal statute commonly known as the Reed amendment.

Under the Federal Constitution (art. 1, § 8, subd. 3), congress is vested with the power to regulate commerce among the several States.   Intoxicating liquor is an article of commerce.   Its transportation from State to State, therefore, became subject to such regulations as congress might provide.   *Bowman* v. *Railway,* 125 U. S. 465 (8 Sup. Ct. 689, 1062) ; *Leisy* v. *Hardin,* 135 U. S. 100 (10 Sup. Ct. 681).   Many laws were enacted by the States in which prohibitory laws were in force, seeking to prevent its importation. These proved unavailing.   Efforts to secure congres-

sional action to relieve from the protection afforded by such Federal control culminated in the enactment on March 1, 1913, of what is known as the Webb-Kenyon act (chap. 90, 37 U. S. Stat. p. 699, U. S. Comp. Stat. 1916, § 8739). The purpose and effect of this act are well expressed in its title:

"An act divesting intoxicating liquors of their interstate character in certain cases."

Omitting extraneous words, it reads as follows:

"The shipment or transportation  *  *  *  of intoxicating liquor  *  *  *  from one State  *  *  * into any State  *  *  *  which  *  *  *  intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State,  *  *  *  is hereby prohibited."

Its validity was soon assailed. A note of the many decisions construing it will be found appended to the section as it appears in the Compiled Statutes of 1916. It came before the Supreme Court of the United States in *Clark Distilling Co.* v. *Railway Co.*, 242 U. S. 311 (37 Sup. Ct. 180, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845), where in an elaborate opinion written by the Chief Justice its constitutionality was upheld and its provisions as affecting State statutes construed. In answer to the contention that congress did not intend thereby to permit the States to regulate such interstate commerce, the court said:

"The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the State law having been in express terms divested by the Webb-Kenyon act of their interstate commerce character, it follows that if that act was within the power of congress to adopt, there is no possible reason for holding that to enforce the prohibitions of the State law would conflict with the commerce clause of the Constitution."

See, also, *Seaboard Air Line Ry.* v. *North Carolina,* 245 U. S. 298 (38 Sup. Ct. 96), and *Wagman* v. *United States,* decided by the circuit court of appeals, sixth circuit, on December 10, 1920 (269 Fed. 568), certiorari to review which was denied by the Supreme Court on March 7, 1921 (U. S. Adv. Ops. 1920-21, 583, 41 Sup. Ct. 376).

As thus construed, the power of a State to prohibit the transportation of intoxicants into it from another State was seemingly well settled. In an amendment to the postal service appropriation act for the fiscal year 1918 (chap. 162, § 5, act March 3, 1917, 39 U. S. Stat. p. 1069, U. S. Comp. Stat. 1916, § 8739a), known as the Reed amendment, it was provided:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any State or Territory the laws of which State or Territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes shall be punished as aforesaid: *Provided,* That nothing herein shall authorize the shipment of liquor into any State contrary to the laws of such State."

Did congress thereby again assume jurisdiction to regulate the transportation of intoxicants between the States? By the Webb-Kenyon act the shipment of such liquors from State to State was divested of its interstate commerce character. Under the Reed amendment congress forbids such transportation in certain cases and imposes punishment for a violation thereof.

The effect of this amendment was before the Supreme Court of the United States in *United States* v. *Hill,* 248 U. S. 420 (39 Sup. Ct. 143), decided on January 13, 1919. The indictment there charged that Hill by means of a common carrier was engaged in transporting intoxicating liquor in interstate commerce from the State of Kentucky into the

State of West Virginia. In the majority opinion, written by Mr. Justice Day, wherein a demurrer to the indictment was overruled, it is said:

"The Constitution confers upon congress the power to regulate commerce among the States. From an early day such commerce has been held to include the transportation of persons and property no less than the purchase, sale and exchange of commodities. *Gibbons* v. *Ogden,* 9 Wheat. 1, 188; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 203 (5 Sup. Ct. 826). 'Importation into one State from another is the indispensable element, the test, of interstate commerce.' *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 107 (30 Sup. Ct. 481, 27 L. R. A. [N. S.] 493, 18 Ann. Cas. 1103) ; *Lottery Case,* 188 U. S. 321, 345 (23 Sup. Ct. 321). The transportation of one's own goods from State to State is interstate commerce, and, as such, subject to the regulatory power of congress. *Pipe Line Cases,* 234 U. S. 548, 560 (34 Sup. Ct. 956). The transportation of liquor upon the person of one being carried in interstate commerce is within the well-established meaning of the words 'interstate commerce.' *United States* v. *Chavez,* 228 U. S. 525, 532 (33 Sup. Ct. 595).

"Congress in the passage of the Reed amendment must be presumed to have had, and in our opinion undoubtedly did have, in mind this well-known and often declared meaning of interstate commerce. It had already provided in the Wilson act for State control over liquor after its delivery to the consignee in interstate commerce. In the Webb-Kenyon act it had prohibited the shipment of liquor in interstate commerce where the same was to be used in violation of the law of the State into which it was transported. In the passage of the Reed amendment it was intended to take another step in legislation under the authority of the commerce clause. The meaning of the act must be found in the language in which it is expressed, when, as here, there is no ambiguity in the terms of the law. The order, purchase, or transportation in interstate commerce, save for certain excepted purposes, is forbidden. The exceptions are specific and are those for scientific, sacramental, medicinal, or mechanical pur-

poses; and in the proviso it is set forth that nothing contained in the act shall authorize interstate commerce shipments into a State contrary to its laws.

"West Virginia is a State in which the manufacture and sale of intoxicating liquors for beverage purposes is prohibited. If the act is within the constitutional authority of congress, it follows that the indictment charged an offense within the terms of the law. That congress possesses supreme authority to regulate interstate commerce subject only to the limitations of the Constitution, is too well established to require the citation of the numerous cases in this court which have so held. Congress may exercise this authority in aid of the policy of the State, if it sees fit to do so. It is equally clear that the policy of congress acting independently of the States may induce legislation without reference to the particular policy or law of any given State. Acting within the authority conferred by the Constitution it is for congress to determine what legislation will attain its purposes. The control of congress over interstate commerce is not to be limited by State laws. Congress, and not the States, is given the authority to regulate interstate commerce. When congress acts, keeping within the authority committed to it, its laws become by the terms of the Constitution itself the supreme laws of the land. * * * It may exert its authority, as in the Wilson and Webb-Kenyon acts, having in view the laws of the State, but it has a power of its own, which in this instance it has exerted in accordance with its view of public policy.

"When congress exerts its authority in a matter within its control, State laws must give way in view of the regulation of the subject-matter by the superior power conferred by the Constitution. *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475) ; *St. Louis, etc., R. Co.* v. *Hesterly*, 228 U. S. 702 (33 Sup. Ct. 703) ; *St. Louis, etc., R. Co.* v. *Seale*, 229 U. S. 156 (33 Sup. Ct. 651, Ann. Cas. 1914C, 156) ; *Minnesota Rate Cases*, 230 U. S. 352 (33 Sup. Ct. 729, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18)."

We think this case decisive of the question here presented. The charge against the defendant is clearly a

violation of the Reed amendment and punishable thereunder. In view of the conclusion thus reached, it is not necessary to discuss the other errors assigned.

The verdict of conviction in the circuit court is reversed and set aside and the defendant ordered discharged.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.

The late Justice BROOKE took no part in this decision.