PEOPLE *v.* BURBANK.

1. Intoxicating Liquors—Liquors in Home Are in Possession
   of Husband—Knowledge Necessary to Render Liable.
   A man living in his home with his wife and family, is in
   possession of wine therein, but, unless he had knowledge
   that it was on his premises, his mere possession of it
   would not render him liable to prosecution therefor.[1]

2. Same—Possession Raises Presumption of Knowledge.
   Possession of intoxicating liquors having been established,
   the presumption of knowledge thereof follows as a legal
   consequence attached to it.[2]

3. Same—Possession in Home Makes Prima Facie Case.
   In a prosecution for illegal possession of intoxicating
   liquor, testimony by the officers that they found several
   bottles of intoxicating wine in the cellar of defendant's
   home made out a *prima facie* case of defendant's guilt.[3]

4. Criminal Law—Flight of Accused May be Considered as
   Bearing on Guilty Knowledge.
   Although the fact that one accused of illegal possession
   of intoxicating liquor left home for four months the day
   following search and seizure of wine in his cellar was
   not substantive evidence of his guilt, it was proper for
   the jury to consider it in determining whether he had
   knowledge that the liquor was in his basement.[4]

5. Intoxicating Liquors — Sufficiency of Evidence to Over-
   come Presumption of Guilt.
   In a prosecution for illegal possession of wine found in
   defendant's cellar, where he claimed that he did not know
   it was there, testimony by his wife that she made it when
   he was not present, and that, so far as she knew, he had
   no knowledge that it was in the basement, is not of such
   a direct, positive, and credible character as, in itself, to
   overcome the presumption of knowledge on his part and
   require the court to direct his acquittal.[5]

---

[1]Intoxicating Liquors, 33 C. J. §§ 198, 536; [2]Id., 33 C. J. § 479;
[3]Id., 33 C. J. § 479; [4]Criminal Law, 16 C. J. § 1063; [5]Intoxicating
Liquors, 33 C. J. § 479.
   Criminal responsibility of husband for violation of liquor law
by wife, see notes in 19 A. L. R. 136; 27 A. L. R. 312.
   Flight before arrest as circumstance tending to show guilt,
see note in 25 A. L. R. 886.

6. CRIMINAL LAW — WHETHER PRESUMPTION OVERCOME BY UN-
CONTRADICTED EVIDENCE QUESTION FOR JURY.
    While the jury may not weigh the presumption against
    the proof offered to rebut it, it is for them to determine
    whether such proof, although uncontradicted, establishes
    the fact relied on to rebut the presumption.[6]

7. SAME—QUESTION FOR JURY UNDER PROPER INSTRUCTIONS.
    Unless the rebutting evidence be of such a direct, positive,
    and credible character that a jury may not disregard it,
    and, if they did so, their verdict would be set aside by
    the court, the question of its sufficiency to establish the
    fact relied on to rebut the presumption must be submitted
    to them under proper instructions.[7]
    SNOW, FELLOWS, and WIEST, JJ., dissenting.

Exceptions before judgment from Montcalm;
Hawley (Royal A.), J.    Submitted January 14, 1926.
(Docket No. 133.)    Decided April 30, 1926.

Arthur Burbank was convicted of violating the
liquor law.    Affirmed.

*Charles H. Goggin*, for appellant.

*Andrew B. Dougherty*, Attorney General, and *John
B. Lewis*, Prosecuting Attorney, for the people.

SHARPE, J.    Defendant was convicted of unlaw-
fully having intoxicating liquor in his possession.
Officers of the county, acting under the authority of
a search warrant, the regularity of the issuance or
service of which is not questioned, found 11 quart
bottles of elderberry wine in the basement of his farm
home.    Some of it contained as high as 10 per cent.
by volume of alcohol.    The defendant was not at
home when the search was made.    There was also
proof that he left his home on the following day
(June 11, 1924), and did not return until about the
middle of October of that year, during which time

[6]Criminal Law, 16 C. J. § 2291; [7]Id., 16 C. J. § 2299.

he was at his son's home in New London, Connecticut. There was proof that the wine was made during defendant's temporary absence from his home. It was at first placed in a crock in the cellarway, and, a few days later, bottled up and placed on a shelf in the basement, where the canned fruit was kept. The basement was about 18 by 24 feet in size, and in it was a furnace. The apples and potatoes gathered in the fall were stored therein.

Defendant's wife, called as a witness in his behalf, testified:

"*Q.* Did you ever tell Mr. Burbank that you had made any of this vinegar before the 10th, ever talk or discuss it with him before the 10th, when the officers came out there?

"*A.* No, sir, I don't remember that I did.

"*Q.* So far as you know, you never had any occasion to talk with him or discuss it with him?

"*A.* No, sir, I never say much about my cooking.

"*Q.* You went on and did the cooking and let him eat it?

"*A.* Yes, sir, let him eat it.

"*Q.* Did he ever say anything to you about it, ever ask you what you had in the bottles down there?

"*A.* No, sir.

"*Q.* Did he ever go down there and look over the canned fruit?

"*A.* I don't think he did.

"*Q.* When you wanted some canned fruit down cellar would you go and get it or send him?

"*A.* I would go and get it myself.

"*Q.* So far as you know, he never saw or doesn't know, didn't know, that the elderberry juice was down cellar?

"*A.* No, sir."

The question presented is whether, under this proof, the defendant was entitled to a directed verdict of acquittal.

A man, living in his home with his wife and family, is in possession of the things contained therein. The

defendant had this wine in his possession, but, unless he had knowledge that it was on his premises, his mere possession of it would not render him liable to a prosecution therefor.   *People* v. *Sybisloo,* 216 Mich. 1 (19 A. L. R. 133) ; *People* v. *Liebiotka,* 216 Mich. 316; *People* v. *Murn,* 220 Mich. 555.

Possession having been established, the presumption of knowledge follows as a legal consequence attached to it.   Had the officers found a barrel of whisky, or several dozen bottles, it could hardly be claimed that he would not have been chargeable with knowledge that they were there.   There is no place to draw the line as to when the presumption exists and when it does not.   The presence of a small quantity is more easily explained than if the quantity be large.   The proof offered by the prosecution made out a *prima facie* case of defendant's guilt.

In *People* v. *McLean,* 230 Mich. 423, it was said:

"In the absence of his claim of ignorance of liquor being in his home, the presumption would prevail that he was aware of its being there."

In *State* v. *Arrigoni,* 119 Wash. 358 (205 Pac. 7, 27 A. L. R. 310), it was said:

"The liquor was found in a house in which the appellant had possession and over which he had control, and the presumption naturally and legally arises that he had possession and control of the things contained therein.   The presumption is, of course, rebuttable, and undoubtedly was rebutted if the account given of the presence of the liquor in the house is to be taken as true.   But, manifestly, it was for the jury, not the court, to say whether or not the account was true."

In *Hawes* v. *Georgia,* 258 U. S. 1 (42 Sup. Ct. 204), the defendant was charged with knowingly permitting certain persons to locate and have on his premises apparatus for distilling and manufacturing prohibited liquors and beverages.   The court said:

"The trial court instructed the jury that Hawes was charged with knowing who had the apparatus upon the premises of which he was in possession or who operated it, and that under the act the burden was upon him to show the want of knowledge. And further, that all that the State had to show was that the apparatus was on the premises, and 'When the State shows that, stopping there, that makes out a *prima facie* case against defendant and you should find the defendant guilty as charged in the indictment,' unless he show that the apparatus was there without his consent and knowledge. * * * It may be presumed that one on such a farm or one who occupies it will know what there is upon it. It is not arbitrary for the State to act upon the presumption and erect it into evidence of knowledge; not peremptory, of course, but subject to explanation, and affording the means of explanation. Hawes had such means. An explanatory statement was open to him with a detail of the circumstances of his acquisition of the place, and he availed himself of it. He could have called others to testify to the circumstances of his acquisition, for the circumstances were not so isolated or secret as not to have been known to others.

"We agree, therefore, with the supreme court of the State that the existence upon land of distilling apparatus, consisting of the still itself, boxes, and barrels, has a natural relation to the fact that the occupant of the land has knowledge of the existence of such objects and their situation."

The more important question is whether the testimony of defendant's wife so conclusively rebutted the presumption of knowledge on his part as to entitle him to an acquittal. It must be borne in mind that the proof offered as to defendant's flight might also be considered by the jury. While not "substantive evidence of guilt," *People* v. *Cismadija*, 167 Mich. 210, 215, or sufficient in itself to warrant a conviction, it was a proper subject for the consideration of the jury in determining whether he had knowledge that the liquor was in his basement. See note in 25 A. L. R.

886. It may be here noted that the jury were very carefully instructed by the court in this respect.

In *Gillett* v. *Traction Co.*, 205 Mich. 410, Mr. Justice KUHN, in an exhaustive opinion, considered the weight to be attached to a presumption as evidence. He held that:

"It serves to establish a *prima facie* case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence."

This holding was approved and followed in *Union Trust Co.* v. *American Commercial Car Co.*, 219 Mich. 557, and in *Depue* v. *Schwarz*, 222 Mich. 308, and must be regarded as the settled law of this State.

The nature of the rebutting evidence must, however, be considered. It was further said in the *Gillett Case:*

"But while this is true, it does not follow, in the case of the particular presumption here under consideration, that immediately upon the introduction of any evidence whatsoever tending to show negligence on the part of the deceased the presumption vanishes and that the burden then rests upon the plaintiff of establishing by affirmative evidence that decedent exercised due care in every respect. A distinction has been recognized between direct, positive, and credible rebutting evidence and mere circumstantial evidence having but a slight or inconclusive tendency to rebut the presumption. When direct, positive, and credible rebutting evidence is introduced, the presumption ceases to operate; but when circumstantial evidence of doubtful value is the only rebutting evidence offered, the question should be submitted to the jury, and if they decide that the circumstantial evidence should be disregarded, the presumption is still sufficient to establish plaintiff's case as to the exercise of proper care by the deceased."

While the testimony of defendant's wife, supported by that of a woman who helped her, establishes the fact that she made the wine and that defendant was

not present when it was made, her statement that, so far as she knew, the defendant had no knowledge that the wine was in the basement, is not of such a "direct, positive, and credible" character as in itself to overcome the presumption of knowledge on his part and to warrant the court in acting upon it as a matter of law and directing the defendant's acquittal. The lack of knowledge on defendant's part, notwithstanding her testimony, rests on the inference that he did not see the liquor when in the crock in the cellarway, or afterwards, when bottled and standing on the shelves in the basement.

Quoting further from the *Gillett Case:*

"And while the jury, in weighing the evidence, may not consider the presumption, yet if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It was not entirely displaced, but remaining in abeyance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed."

It surely cannot be the law that the testimony of a witness as to a fact which, if established, fully rebuts the presumption on which the *prima facie* case rests, must in all cases be accepted as true, no matter how improbable or unworthy of belief it may seem to be. While the jury may not weigh the presumption against the proof offered to rebut it, it is for them to determine whether such proof, although uncontradicted, establishes the fact relied on to rebut the presumption.

A holding that the presumption vanishes when any proof is offered to rebut it would lead to grave re-

sults.    In certain cases, malice is to be presumed from the act of killing another.    Should the defendant testify that his conduct was not actuated by malice, would such testimony, in itself, entitle him to an instruction that the presumption was thereby removed?    The possession of stolen goods, soon after they are taken, raises a presumption that the person in whose possession they are found is the thief.    Would his denial, unaccompanied by any explanation as to his possession, in itself so rebut the presumption as to take the case from the jury?    Considerations of this kind might be multiplied.

The rule is, as I think was clearly stated by Mr. Justice KUHN, that unless the rebutting evidence be of such a "direct, positive, and credible character" that a jury may not disregard it, and, if they did so, their verdict would be set aside by the court, the question of its sufficiency to establish the fact relied on to rebut the presumption must be submitted to them under proper instructions.    It follows that the defendant was not entitled to a directed verdict.

Other errors assigned have been examined, and are found to be without merit.

The conviction is affirmed.    The trial court will proceed to judgment.

BIRD, C. J., and STEERE, CLARK, and McDONALD, JJ., concurred with SHARPE, J.

SNOW, J. (*dissenting*).    The defendant is the owner of a 120-acre farm in Reynolds township, Montcalm county.    He is 67 years of age, his wife 63, and his son Dale 23.    These constitute his family, and they live upon and operate the farm.    The dwelling house is a large two-story structure and has a cellar under a portion of it where is kept vegetables, canned fruits, roots, and the like.    June 10, 1924, while the defendant was away from home, the dwelling house was

searched by officers armed with a search warrant. Mrs. Burbank and a neighbor woman were present. The officers found in the cellar, among the cans of fruit, eleven quart bottles and one pint bottle of elderberry juice, which they seized and had analyzed by a State chemist, who found the juice to contain from .2 to 10.1 per cent. alcohol by volume.

The undisputed evidence shows that this juice was made by Mrs. Burbank in the fall of 1923. A neighbor, Mrs. Towers, was present and told her how to make what she termed elderberry vinegar. After it was made it was then put into a crock, placed in the cellarway, and in a couple of days placed in bottles by Mrs. Burbank and put in the cellar with the canned fruit, where it was all found by the officers, excepting one pint which Mrs. Burbank claimed she had used in the making of mince pies. It is claimed it was never used as a beverage and was only for cooking purposes. There is no proof that the defendant was present or at home when the juice was prepared, or that he ever saw it in the basement, countenanced its remaining there, or in fact ever knew of its existence.

On the day of the search by the officers the defendant was away from home and did not return until the following day. The officers, however, saw his son Dale and told him to tell his father to come to Stanton. Dale testified that he told his father a search of the house had been made, but was not sure he gave him the message about coming to Stanton. At any rate the defendant did not go to Stanton, but on the following day left home and remained away from June 11th until about the middle of the following October, when he returned and was subsequently arrested on this charge.

It is the claim of defendant that there was no evidence that he had anything to do with the making of the forbidden juice; that he was not there when

it was made, and that he did not know it was in the house or ever had been until after it had been taken away by the searching officers, and that therefore the court should have granted the motion to direct a verdict of not guilty. The prosecution contends there was proof tending to show the defendant had knowledge of the fact that illicit liquor was being kept in the house from the fact that when the officers made the search on June 10th they left word with his son Dale to tell him that a search had been made at the home, and for him to come to Stanton the next day; that instead of coming to Stanton he left the State and remained away for more than three months; that such flight, under such circumstances, was competent evidence and ample proof of his guilty knowledge, and that the jury would be warranted in finding a verdict of guilty.

Admittedly this so termed flight of defendant was the only evidence in the case that the liquor in question was in his home with his knowledge or consent, or with his participation, or that he permitted or suffered the same to be in his home, which would be the test of his guilt or innocence under the circumstances in this case. While it is true that evidence of flight, along with the reason that may have prompted it, is a circumstance to be considered by the jury in connection with other evidence in the case, it is not of itself, standing alone, substantive evidence of guilt.

In the case of *People* v. *Cismadija,* 167 Mich. 210, the trial court instructed the jury as follows:

"The court instructs you that you have a right to consider such flight and subsequent concealment of respondent as evidence of his guilt."

This was erroneous instruction, and Justice BROOKE, speaking for this court, said:

234—Mich.—39.

"We think it would be a dangerous rule which would permit the jury to consider flight as substantive evidence of guilt."

In the case at bar it may be said, too, that it is questionable if there was evidence of actual flight. While the son Dale admits he told his father of the search and seizure, he does not say that he told him he was wanted at Stanton. There was no warrant for the defendant at that time, and witnesses testified that he went away on a visit to his son in another State. In any event, this evidence, standing alone, is not sufficient to carry the case to the jury, and, as this was the only circumstance offered to show guilty knowledge of the defendant of the presence of liquor in the house, the jury should have been instructed to return a verdict of not guilty.

It will be unnecessary to discuss other assignments of error.

The verdict should be set aside and the trial court directed to discharge the defendant.

FELLOWS and WIEST, JJ., concurred with SNOW, J.