PEOPLE *v.* AVERY.

1. INTOXICATING LIQUORS — CRIMINAL LAW—ILLEGAL POSSESSION
   AND TRANSPORTATION—GOOD FAITH OR LACK OF KNOWLEDGE AS
   A DEFENSE.

   Where one of the partners owning a moving and cartage
   business started for a distant city with a truck which
   one of the partnership's employees assisted in loading with
   what was called, by the person engaging the truck, canned
   goods, but which proved to be intoxicating liquors, without
   attempting to discover the real nature of the contents of
   his load, good faith or lack of knowledge of said con-
   tents is *held*, by an equally divided court, under the cir-
   cumstances of this case, to be no defense in a prosecution
   for unlawful possession and transportation.[1]

2. SAME — STATE COURT HAS JURISDICTION WHERE INTERSTATE
   SHIPMENT VIOLATION OF STATE LAW.

   The State court has jurisdiction, in a prosecution for
   possession and transportation of intoxicating liquors in
   violation of State law, although the shipment was inter-
   state (section 2, 18th Amend. Fed. Const.).[2]

Exceptions before judgment from Jackson; Parkin-
son (James A.), J.    Submitted April 15, 1926.
(Docket No. 145.)   · Decided December 8, 1926.

John F. Avery was convicted of violating the liquor
law.    Affirmed by an equally divided court.

*Frank L. Blackman,* for appellant.

*Andrew B. Dougherty,* Attorney General, *John
Simpson,* Prosecuting Attorney, and *Harry E. Barnard,*
Assistant Prosecuting Attorney, for the people.

SHARPE, J.    The defendant reviews his conviction
on a charge of violating what is known as the pro-

[1]Intoxicating Liquors, 33 C. J. § 197; [2]Id., 33 C. J. § 198.

hibition act on exceptions before sentence. The information charged him with the unlawful possession of intoxicating liquor and its unlawful transportation.

The defendant is a resident of the city of Detroit and has been engaged, with his wife, for several years in the moving and cartage business in that city. Their place of business is located at 2524 Cass avenue. He owns one large moving van and his wife another. They also own several small trucks used in their business. They advertise for long distance moving and hauling. In response to an advertisement seeking a load for transport from Detroit to Chicago, a man giving his name as Louis King came to defendant's office and arranged with him, for a consideration of $130, which was paid, to transport a load of what he called canned goods to Chicago. Defendant was engaged for that day on a moving job, and did not return until late at night. He found the van, which he claimed belonged to his wife, standing in front of the office. He testified that his wife told him that one of their employees had driven it around to the place on Joseph Campau avenue where it was to be loaded, and assisted in loading it and brought it back. He claims to have slept that night in the cab of the van. He started for Chicago early the next morning. When about three miles east of the city of Jackson, he was met and stopped by a deputy sheriff of that county, and, upon examination, the van was found to contain about 300 cases of ale and about 25 cases of whisky. There were no canned goods in it. Defendant was arrested and the liquor taken possession of by the officer. It is his claim that he had no knowledge as to the contents of the van. No question as to the legality of the arrest or the search and seizure is presented. At the conclusion of the proofs, the trial court refused defendant's request to submit to the jury whether the defendant knowingly had the liquor in his possession, or was knowingly

transporting it, and instructed the jury that under his own testimony he was guilty as charged. The jury retired and soon after returned a verdict of guilty.

The exceptions present the following questions:

(1) Is knowledge an essential element of the crime of possessing or transporting intoxicating liquor?

(2) Had the State court jurisdiction, the transportation being interstate?

1. The State prohibition act (Act No. 338, Pub. Acts 1917, as amended [Comp. Laws Supp. 1922, § 7079 (1) *et seq.*]) is a police regulation. The first section reads as follows:

"This entire act shall be deemed to be an exercise of the police power of the State, for the protection of the economic welfare, health, peace and morals of the people of the State, and all of its provisions shall be liberally construed for the accomplishment of those purposes."

Such statutes may "impose criminal penalties irrespective of any intent to violate them." *People* v. *Roby,* 52 Mich. 577, 579 (50 Am. Rep. 270).

"Criminal intent is, ordinarily, an element of crime, and this is true although the offense is purely statutory. It is competent, however, for the legislature to make certain acts, coupled with certain facts, punishable by fine and imprisonment, without regard to the actor's actual knowledge of the existence of the facts." *People* v. *Rice,* 161 Mich. 657, 664.

Many cases are cited to support this holding. The United States Supreme Court has so held:

"The power of the legislature to declare an offense, and to exclude the elements of knowledge and due diligence from any inquiry as to its commission, cannot, we think, be questioned." *Chicago, etc., R. Co.* v. *United States,* 220 U. S. 559, 578 (31 Sup. Ct. 612).

Later Michigan cases are, *People* v. *Worges,* 176 Mich. 685, where defendant's belief and his reasons

therefor that the population of the township had increased to more than 1,000 since the last census, and that he was therefore lawfully permitted to keep his saloon open later than 9 o'clock, were of no avail as a defense, and *People* v. *Damm,* 183 Mich. 554, where the bartender claimed to have been unaware that the young man to whom he had sold liquor was a student, in which it was held that want of knowledge or good faith was no defense. This court has on several occasions alluded to the harshness of such statutes, and has said that criminal intent is a necessary element of the offense unless there be reason to the contrary. *People* v. *Osborn,* 170 Mich. 143, 149 (40 L. R. A. [N. S.] 168). In *People* v. *Rice, supra,* it was said: "Such legislation is enacted and is sustained, for the most part, on grounds of necessity."

Section 2 of the statute, as amended, in express terms and without qualification makes it unlawful for any person to transport liquor or have it in his possession within the confines of the State. This enactment is within the power of the State legislature. *Barbour* v. *Georgia,* 249 U. S. 454 (39 Sup. Ct. 316). The word "possess" means to have actual control, care and management of. Ownership is not an essential element. Blakemore on Prohibition (2d Ed.), 230, and cases cited. There can be no question under the proofs but that the defendant had the liquor which was on the van in his possession, and that he was transporting it within the State.

We may take judicial notice that but a small quantity of the intoxicating liquor handled in this State is manufactured within its borders. The greater part of it is brought in from outside. It is our duty to consider the purpose sought to be accomplished by the legislative act. The people of this State have expressed, in no uncertain terms, their desire that the use of intoxicating liquor, as a beverage, be sup-

pressed. The efforts of those charged with the enforcement of the law are and should be directed to prevent the importation into and the transportation of such liquors within the State. It must be conceded that the enforcement of the provision prohibiting possession and transportation is an effective means to that end.

If the word "knowingly" be read into the statute, the burden will in all cases be cast upon the prosecution to establish beyond a reasonable doubt that a person found with intoxicating liquor under his actual control, care and management had knowledge that such liquor was in his possession and that it was intoxicating. It may be said that knowledge will be presumed from possession, but such a presumption may be rebutted by the testimony of the accused that he did not know that the contents of the containers was liquor or that it was intoxicating. The prosecution can rarely, if ever, meet this claim by proof of knowledge.

If ever there be a necessity for construing such a statute as it plainly reads, this case would seem to present one. If a man may undertake to transport a large truck load of merchandise incased in the way intoxicating liquors are usually put up, have his employee assist in the loading, start on his trip without any investigation or any inquiry of his employee as to the contents of his load, and if before delivery it be found to consist entirely of packages of intoxicating liquors, and he may escape liability because he did not know what his load contained, the efforts of the officers to enforce the law will be much impeded, if not rendered futile.

Persons engaged in transportation business in this State are chargeable with knowledge of the manner in which the illicit handling of intoxicating liquor is being conducted. It is no particular hardship to require them, before accepting a load of merchandise,

made up of packages similar to those in which such liquors are usually incased, to satisfy themselves that the contents of their load may be lawfully transported.

In crimes involving intent it has been said:

"Even where, as affecting intent, ignorance of fact is set up, the defense is unavailable where the defendant, by the exercise of due diligence, could have become aware of his mistake." 1 Wharton's Criminal Law (11th Ed.), § 114.

There are cases in which ignorance or want of knowledge would be a defense. Where a charge was made under the statute forbidding the carrying of concealed weapons, it was said:

"Of course, if the weapon was carried upon his person through restraint or ignorance, that would be a good defense to the prosecution." *People* v. *Williamson,* 200 Mich. 342.

A man might put a weapon in another man's pocket and he might not know it was there. But if he saw a holster in his pocket, he could not plead ignorance if he neglected to ascertain what it contained. A person might surreptitiously put a bottle of liquor in a man's pocket, or one or more bottles in his grip or in his room. In such cases he would not be conscious of the fact that the bottles were in his possession, and his ignorance of that fact would be a good defense. But if he saw the bottle or bottles, and they were of the kind in which intoxicating liquor is usually put up for sale, and if he neglected to make a reasonable effort to ascertain the contents, his ignorance would be no defense to a charge of unlawful possession. So, too, if one or more bottles were concealed in a load of household goods or other merchandise which a carrier was hauling, or in a grip or other small receptacle one person was carrying for another. Such cases are in line with the facts presented in the late case of *People* v. *Burbank,* 234 Mich. 600, wherein

it was held that a man was presumed to have possession of that which was in the basement of his home, but that in defense he might show that he did not know that certain bottles of wine, made by his wife, were on one of the shelves therein.   See, also, *People* v. *Grabiec,* 210 Mich. 559; *People* v. *Maher,* 226 Mich. 69; *People* v. *Ninehouse,* 227 Mich. 480.   The ignorance or want of knowledge in such cases is of the possession itself, and not of the nature of the thing possessed.   In *Commonwealth* v. *Mixer,* 207 Mass. 141 (93 N. E. 249, 31 L. R. A. [N. S.] 467, 20 Ann. Cas. 1152), a somewhat similar question to that here presented was considered and discussed at length. The defendant, a driver in the employ of a common carrier, had upon his load for transportation a sugar barrel found to contain intoxicating liquor, in violation of the law requiring permits for such transportation in no-license towns.   His want of knowledge that the barrel contained intoxicating liquor was held to be no defense.

"The function of imposing indictability on pernicious acts irrespective of intent is one which has been exercised by legislatures, not only frequently but from necessity.   *   *   *   Where the legislature imposes a specific penalty on a person doing a particular thing, irrespective of *scienter,* it will be the duty of the courts to enforce the prohibition.   The question is one of policy; and this may be taken into consideration when the legislative meaning is sought.   That a man should be convicted of a malicious act without proof of malice, or of a negligent act without proof of negligence, is, of course, an enormity which no legislature could be supposed to direct.   But it is otherwise as to certain mischievous acts which it may be a sound policy to prohibit arbitrarily, because they imperil public safety (as, for example, the selling of intoxicating drinks and defective storing of explosive compounds), and because to require *scienter* to be proved would be to defeat the object of the statutes, since in many cases, and those the most dangerous of the class, it would

be out of the power of the prosecution to prove *scienter* beyond reasonable doubt. The legislature may properly say, 'In such cases we presume *scienter;* whoever deals with these dangerous agencies does so at his risk.'" 1 Wharton's Criminal Law (11th Ed.), § 113.

In *Kendall* v. *State,* 113 Ohio St. 111 (148 N. E. 367), wherein the defendant was charged with the violation of a statute prohibiting the employment of a child under the age of 14 years in certain vocations, the court said:

"If, in every instance of prosecution for the violation of such statutes, proof of such knowledge should be required or if the absence of such knowledge would be a complete defense, each case would result in a trial upon the immaterial issue as to the knowledge of the employer, in most cases insusceptible of proof."

Defendant's counsel relies on decisions of other courts to sustain his contention. These will be briefly referred to.

In *State* v. *Harris,* 106 Or. 211 (211 Pac. 944), it was said that the statute of that State (quite similar to ours) should be read as if the word "knowingly" had been written therein. The court then said:

"From this it follows that before a person can be convicted of being unlawfully in possession of intoxicating liquor, it is necessary that his possession should be a conscious possession and not merely such possession as would arise from having intoxicating liquor placed in his pocket or within his house or upon his premises without his knowledge."

In *City of Jackson* v. *Gordon,* 119 Miss. 325 (80 South. 785), the defendant claimed that the liquor found in his shop had been left there by a customer, and it was held that he could not be convicted if "he did not know or was not conscious of the possession." It was further said:

"To say that a person could be held guilty of this

offense in a case where some other party had placed in his possession, without his knowledge or consent, a bottle of liquor, would be to go beyond the meaning and purpose of the law.    Such a construction of the act would make it necessary on the part of every sober citizen to frequently search himself and his habitations to see whether or not he is an offender."

In *Troup* v. *State*, 30 Ga. App. 346 (117 S. E. 410), the claim of the defendant was that the liquor found on his premises had been left there by another man, and that he did not know it was there.

In *Szymanski* v. *State*, 93 Tex. Crim. Rep. 631 (248 S. W. 380), the liquor was found in a jug in a sack between the seats of the car defendant was driving, and he disclaimed knowledge that it had been put there.

In *State* v. *Fishback*, 122 Wash. 246 (210 Pac. 375), it was defendant's claim that a person unknown to him had placed liquor in a gunnysack and a suit case in a car he had been driving when he was absent therefrom.    The fact of his knowledge was submitted to the jury, resulting in his conviction.

The question presented in all of these cases was quite similar to that considered by us in *People* v. *Burbank, supra.*

2. The second section of the Eighteenth Amendment to the Federal Constitution reads as follows:

"The congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

This amendment became effective January 16, 1920. *Dillon* v. *Gloss*, 256 U. S. 368 (41 Sup. Ct. 510).    The State laws then in force were not affected thereby, and did not need to be re-enacted.    *Vigliotti* v. *Pennsylvania*, 258 U. S. 403 (42 Sup. Ct. 330).    The effect of this amendment is stated by Chief Justice Taft in *United States* v. *Lanza*, 260 U. S. 377 (43 Sup. Ct. 141), as follows:

"The probable purpose of declaring a concurrent power to be in the States was to negative any possible inference that in vesting the National Government with the power of country-wide prohibition, State power would be excluded.    In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits."

It is apparent that the Reed amendment, considered by this court in *People* v. *Keeley,* 213 Mich. 115, if not repealed, or its provisions suspended, by the adoption of the Eighteenth Amendment, and the enactment of the Volstead act pursuant thereto, has no application to such transportation as the defendant was here engaged in.    The liquor was not being shipped on a through bill of lading or under permit as required by the Volstead act.

"There is no ground for holding that the prohibition of the statute against transporting liquor in interstate commerce 'into any State or Territory the laws of which State or Territory prohibit the manufacture,' etc., includes the movement in interstate commerce through such a State to another." *United States* v. *Gudger,* 249 U. S. 373, 374 (39 Sup. Ct. 323).

The exceptions are overruled.    The trial court will proceed to judgment.

CLARK, J., concurred with SHARPE, J.

MCDONALD, J.    I concur in the result.    Under the undisputed facts in this case, good faith or lack of knowledge of the contents of the load is no defense.

STEERE, J., concurred with MCDONALD, J.

FELLOWS, J.    I am ready to subscribe to the following language in the opinion of Mr. Justice SHARPE:

"A person might surreptitiously put a bottle of liquor in a man's pocket, or one or more bottles

in his grip or in his room. In such cases he would not be conscious of the fact that the bottles were in his possession, and his ignorance of that fact would be a good defense. But if he saw the bottle or bottles, and they were of the kind in which intoxicating liquor is usually put up for sale, and if he neglected to make a reasonable effort to ascertain the contents, his ignorance would be no defense to a charge of unlawful possession."

If, however, this language is to be accepted by this court, this case must be reversed. The trial judge in an exhaustive instruction held that it was no defense that the defendant had no knowledge that the cartons contained intoxicating liquor, or that by ordinary diligence defendant could not have discovered that they contained liquor. One excerpt from the charge illustrates the vein running through it. He said:

"Therefore, under the circumstances and in view of the language of the statute and the decisions that I have read, I cannot feel that I would be doing my duty in saying to you that you might acquit this man if you should find that he didn't know or ought not to have known it."

The rule adopted by the overwhelming majority of States so far as I have been able to ascertain is that if the defendant has no knowledge that the commodity transported is intoxicating liquor, and by the exercise of reasonable diligence would not discover that it was intoxicating liquor, he cannot be held to have violated the law. The holding of the Massachusetts court cited by my Brother (*Commonwealth* v. *Mixer*, 207 Mass. 141 [93 N. E. 249, 31 L. R. A. (N. S.) 467, 20 Ann. Cas. 1152]) stands alone in the Union so far as I have been able to find in the time at my disposal. My Brother has considered some of the cases holding to the contrary. The Oregon (*State* v. *Harris*, 106 Or. 211 [211 Pac. 944]) and Mississippi (*City of Jackson* v. *Gordon*, 119 Miss. 325 [80 South.

785]) cases quoted from by my Brother both announce a contrary doctrine. I quote from the syllabus in *Troup* v. *State*, 30 Ga. App. 346 (117 S. E. 410):

"Under the facts of this case the court did not err in charging the jury 'that if the liquor in question was on the defendant's premises without his knowledge and consent, he would not be guilty; if you find it was there with his knowledge and consent he would be guilty.'"

I also quote the syllabus in *State* v. *Fishback*, 122 Wash. 246 (210 Pac. 375):

"Owner of automobile, who was hired to make a certain trip and was not informed and did not know that person by whom he had been hired proposed to bring back liquor, and who did not discover that there was liquor in the automobile until an accident, when the automobile was taken to a garage and the liquor discovered, was not guilty of bootlegging."

I desire to also call attention to some other cases not discussed by my Brother and I shall only consider cases dealing with the liquor laws of the various States. In *Golpi* v. *State*, 14 Okla. Crim. 564 (174 Pac. 288), it is held (quoting from the syllabus):

"A person who conveys a package from one place in this State to another place therein, which package contains intoxicating liquor of which he has no knowledge and no information sufficient to put a reasonable man on inquiry, is not subject to the punishment imposed by the statute for unlawfully conveying the intoxicating liquor from one place in this State to another place therein."

In *Parker* v. *Commonwealth*, 135 Va. 625 (115 S. E. 566), it was said:

"Did the court err in refusing to give the following instruction offered by the accused:

"'The court instructs the jury that, in order to be guilty of transporting ardent spirits as charged in this indictment, the defendant must have known that the package handled by him contained ardent spirits.'

"This question must be answered in the affirmative.

"The accused by his testimony claimed that he did not know the contents of the bag he was carrying when arrested.    If true, this was a complete defense."

The defendant here was a private carrier for hire. Doubtless the rule  governing a common carrier was applicable to him.    In *Adams Express Co.* v. *Commonwealth,* 160 Ky. 66 (169 S. W. 603), it was said by Chief Justice Hobson, speaking for the court:

"When whisky is shipped into local option territory and delivered by a carrier, it is incumbent on the carrier before delivering the whisky, to be circumspect and use ordinary care to learn for what purpose it is to be used.    If it acts upon reasonable grounds in good faith, after such investigation as ordinary care requires, and is misled, it is not liable; otherwise, it is; this is a question for the jury on the facts and the court should instruct the jury as above indicated."

In *Southern Express Co.* v. *State,* 188 Ala. 454, 485 (66 South. 115), it was said:

"In our opinion, however, the court should have granted the defendant's motion to dissolve the preliminary writ of injunction.    If, in good faith, and after proper investigation, a common carrier of interstate commerce delivers liquor to a consignee without any knowledge on its part that such liquors are intended by the consignee for illegal use, then such common carrier cannot, we think, be held to have violated any law of this State."

And in *Wells Fargo & Co. Express* v. *State,* 130 Ark. 210, 215 (197 S. W. 13), Justice Hart, speaking for the court, said:

"Common carriers are required to obey the law in like manner as other people are required to obey it. Its agents are required to exercise the same judgment as a reasonably prudent man would be required to exercise in the conduct of his own business.    In short, when alcohol is shipped from a point out of this State to a point in the State and delivered by a common

236—Mich.—36.

carrier to a person in this State, the duty devolves upon the carrier to use reasonable care to learn for what purpose it is to be used, and it can only deliver the alcohol when in the exercise of such reasonable care it is convinced that the alcohol is to be used for strictly medicinal or mechanical purposes.    As stated in *Adams Express Co.* v. *Commonwealth,* 160 Ky. 66 (169 S. W. 603), if the express company acts upon reasonable grounds in good faith after such investigation as ordinary care requires, and is misled, it is not liable; otherwise, it is liable."

In *State* v. *Goss,* 59 Vt. 266 (9 Atl. 829, 59 Am. Rep. 706), the defendant, agent of an express company, was charged with illegal sales of intoxicating liquors. The shipments were sent C. O. D. and he collected the money.    He insisted in his defense that he had no knowledge of the contents of the packages, but the trial court held this to be immaterial.    There was testimony that at least one of the packages emitted the odor of intoxicating liquor.    In reversing the case, it was said: .

"Hence, the turning point of this case is whether the respondent had reason to believe or suspect—for it appears that he did not know—that these packages contained what they did.    If he did, he is charged with notice of their contents, and is guilty; if he did not, he is not charged with such notice, and is not guilty; and as the evidence tended to show he did, and the court ruled the point immaterial, the case must go back for a new trial."

It will be noted that arrayed against Massachusetts are Alabama, Arkansas, Georgia, Mississippi, Oregon, Washington, Oklahoma, Kentuckey, Vermont, and Virginia.    Clearly the majority rule is the one contended for by defendant.    Let us see what the textwriters say:    Blakemore on Prohibition (2d Ed. 1925), p. 210, contains the following:

"The crime of transporting liquor commonly includes the ingredient of knowledge, and the defendant has a right to have the jury instructed that the defend-

ant must have known that the package contained intoxicating liquor.     *Parker* v. *Commonwealth,* 135 Va. 625 (115 S. E. 566) ; *State* v. *Fishback,* 122 Wash. 246 (210 Pac. 375).    Still one may be convicted of transporting where he carried a suit case containing liquor although he had no actual knowledge that it contained liquor, if from the circumstances a man of ordinary intelligence would have known this.    *State* v. *Twiggs,* 123 S. C. 47 (101 S. E. 663)."

McFadden on Prohibition (1925) in section 286 says:

·   "Knowledge.    In order to uphold a charge of unlawful transportation, it must be shown that the accused had knowledge that his vehicle was being used unlawfully, or that from the reputation of the person intrusted with the vehicle or other circumstances attending his occupation or employment, the inference would arise that the owner had reason to suspect that his property might be used for unlawful purposes. Also, a party may be convicted of unlawful transportation where he carried a suit case containing liquor, though he had no actual knowledge that it contained liquor, if from the circumstances a man of ordinary intelligence would have known this."

See, also, 33 C. J. p. 583; Underhill's Criminal Evidence (3d Ed.), p. 1009.

I shall call attention to but one Michigan case. Language will be found in some of our cases which might be helpful although not directly in point.    But I think the holding of this court in *People* v. *Germaine,* 234 Mich. 623, by analogy commits this court to the majority rule.    In that case defendant contended that the bottle of which he had possession belonged to his drunken friend, Bannon, and that he threw it into some bushes and that, therefore, his possession was not unlawful.    In holding that he was entitled to have such defense go to the jury, a majority of the court held:

"If the liquor belonged to Bannon and defendant had no possession thereof, but when the officers arrived

he took the bottle from the car seat for the purpose of destroying it, he was entitled to have such defense *and his good faith under all the circumstances* submitted to the jury upon the question of whether he unlawfully had possession of the liquor."

Upon this record the jury would be justified in finding that defendant here knew, or in the exercise of due diligence should have known, that the cartons contained intoxicating liquor. The testimony clearly made that question one of fact. The trial court by his peremptory instruction withdrew this question of fact from the jury and held defendant's claim on the facts constituted no defense. In my judgment this was error. The question should have been submitted to the jury. Intent and conscious knowledge are not synonymous.

If this conviction is affirmed, then every common carrier and its employees, engineers, firemen, conductors, freight handlers, all who aid in hauling or handling freight are guilty of a felony and violate the prohibition law if intoxicating liquors are hauled or handled by them in the commerce of the State, even though consigned as legitimate articles of commerce, and under such circumstances as to create in the minds of reasonable men using due diligence no suspicion that they are contraband.

I agree with Justice Sharpe on the second question, but in my judgment the case should have gone to the jury under proper instructions and should be here reversed for the error in taking from the jury the question of conscious knowledge.

Bird, C. J., and Snow and Wiest, JJ., concurred with Fellows, J.