Argued at Pendleton October 31, 1922, affirmed January 9, 1923.

## STATE v. HARRIS.

### (211 Pac. 944.)

**Criminal Law—Court Judicially Knows Moonshine Whisky is Intoxicating.**

1. Courts take judicial notice of the fact, which is within the common knowledge of all men, that moonshine whisky is intoxicating, and that liquor which does not contain more than one half of one per cent of alcohol is not intoxicating.

---

J. Judicial notice as to intoxicating character of liquor, see note in 20 L. R. A. 648.

Intoxicating Liquors—Possession must be Conscious to be Unlawful.

2. Section 2224—4, Or. L., making it unlawful to possess intoxicating liquor, must be construed as if the word "knowingly" were written into the statute, so that a person cannot be convicted of being unlawfully in possession of intoxicating liquor unless his possession was a conscious possession, and not such as would arise from having it placed in his pocket or in his house without his knowledge.

Intoxicating Liquors—Conscious Possession can be Proven by Circumstantial Evidence.

3. It is not necessary for the state to establish that defendant's possession of intoxicating liquor was conscious by direct testimony, but that can be established by circumstantial evidence, if the circumstances are such that it is reasonable to infer he did have conscious possession.

Intoxicating Liquors—Evidence Held to Warrant Finding Defendant Knew Whisky was in His Room.

4. Evidence that whisky was found in a room which was in the exclusive joint occupancy and possession of defendant and his wife as part of their living quarters, that the one who admitted owning the whisky had no right to enter the room without the consent of the defendant or his wife, and that defendant kept or permitted to be kept in the room a still and all the necessary apparatus, was sufficient to warrant the jury in finding that defendant knew of the presence of the whisky in the room.

Intoxicating Liquors—Evidence of Possession of Alcoholic Extracts Held Admissible.

5. In prosecution for unlawfully possessing intoxicating liquor, evidence that flavoring extracts containing 65 per cent of alcohol were found in defendant's room and also several labels from similar bottles, as well as moonshine whisky, was admissible, since the possession of the extracts was unlawful if they were capable of being used and intended to be used for beverage purposes, and the state was not limited to proof of the possession of whisky.

Criminal Law—Evidence of Existence of Still Held Admissible to Show Intent in Possessing Whisky.

6. In a prosecution for unlawfully possessing moonshine whisky, evidence that there was a still and other apparatus used for distilling intoxicating liquor on the premises, and that mash was found in the catch-basin, was admissible as tending to show that defendant's possession of the whisky was unlawful, even though it also tended to show the commission of another offense.

Witnesses—Cross-examination of Officer as to Complaints Against Others Held Immaterial.

7. In a prosecution for unlawfully possessing intoxicating liquor, cross-examination of the officer who filed the complaint against ac-

2. Constitutionality of statute making possession of liquor *prima facie* evidence of intent to violate it, see note in 1 **L. R. A.** (N. S.) 626.

cused as to whether he had filed similar complaints against the wife of accused and a third person who claimed to own the whisky found in defendant's room was immaterial, since it made no difference whether joint or separate complaints were filed against those parties and accused.

### Witnesses—Can Explain Statements Sought to be Used for Impeachment.

8. Where the testimony of a witness is directly attacked by an attempt to show inconsistent statements, the witness must be given an *opportunity to explain the statements,* under Section 864, Or. L., expressly providing for such opportunity.

### Witnesses—Court has Discretion to Permit Witness to Explain Statement During Cross-examination.

9. Where a witness is cross-examined as to inconsistent statements to lay a foundation for impeachment, it is within the discretion of the trial court to permit the witness to explain the statement at the time of his cross-examination instead of postponing the explanation for his redirect examination.

### Criminal Law—Purpose of Another in Buying Whisky Found in Defendant's Possession is Immaterial.

10. In a prosecution for unlawfully possessing whisky which was found in defendant's home, where witness testified he had purchased the whisky and placed it in defendant's home without the latter's knowledge, it was immaterial for what purpose the witness had purchased the whisky.

### Criminal Law—Proof of Friendly Relations Between Wife of Accused and Purchaser of Whisky Held not Prejudicial.

11. Even though evidence that defendant's wife brought food to the witness, who testified he had purchased and placed in defendant's house the whisky defendant was charged with possessing, was immaterial, the admission of such evidence could not be prejudicial to defendant, as it merely tended to show friendly relations existing between the parties.

### Witnesses—Permitting Cross-examination as to Change of Venue Does not Authorize Redirect Examination as to Reasons.

12. The fact that defendant permitted the prosecution to cross-examine his witness as to a change of venue procured by the witness for the trial of a charge against him, which was immaterial does not entitle defendant on redirect examination to inquire the reasons for the change of venue.

### Criminal Law—Testimony Another Told Witness He Purchased Whisky is Hearsay.

13. In a prosecution for the unlawful possession of intoxicating liquor, where a witness for defendant had testified that he bought the whisky and placed it in defendant's house without defendant's knowledge, evidence by another witness that the first witness told him he bought the whisky was properly excluded as hearsay.

Intoxicating Liquors—Instructions as to Unlawful Possession Held Correct and Applicable.

14. In a prosecution for the unlawful possession of intoxicating liquor which was found in defendant's living-room over the store owned by defendant's wife, but managed by him, where the proprietor of the butcher-shop in the store had testified he bought the whisky and placed it in defendant's room without defendant's knowledge, instructions as to the elements of unlawful possession, as to joint possession, as to guilt if the butcher placed the whisky in defendant's room with defendant's knowledge, and as to defendant's control of the home as head of the family, *held,* correct statements of the law applicable to the evidence.

Intoxicating Liquors—Defendant Receiving Whisky to Keep for Another is Unlawfully in Possession.

15. If defendant received whisky to keep for another knowing it to be intoxicating liquor, or permitted it to remain in his room after it was deposited there with his knowledge, he would be in unlawful possession of the whisky within the statute.

Intoxicating Liquors—Occupant of Room is in Custody of Whisky He Knows Another Put There.

16. It is not necessary for the liquor to be the property of defendant or for defendant to have legal control over it to make him guilty of unlawful possession, but is essential that he should have the power to control it, and, if he knew that whisky was placed in his room by another, he had power to order it removed and was in unlawful possession thereof if he failed to do so.

Criminal Law—Accused cannot Complain of Modification of Instruction Whose Only Error was in Original.

17. Where the instruction requested by accused and modified by the court was erroneous, but the error therein was in the original part requested by accused, accused, having induced the court to commit the error, cannot complain thereof.

Criminal Law—Requested Instructions Covered by Those Given may be Refused.

18. A conviction will not be reversed for assigned error in refusing to give instructions requested by defendant, where the instruction given covered all of the matters contained in the requested instructions.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Green & Hess,* with an oral argument by *Mr. R. J. Green.*

For respondent there was a brief and oral arguments by *Mr. J. A. Burleigh* and *Mr. A. E. Clawson,* District Attorney.

RAND, J.—The defendant, Barney Harris, was tried in the Justice Court and convicted of the crime of having intoxicating liquor unlawfully in his possession. From the sentence there imposed he appealed to the Circuit Court for Wallowa County, where he was again found guilty and was sentenced to pay a fine in the sum of $300 and to be imprisoned in the county jail for the period of six months. From this judgment he has appealed.

It appears from the testimony that defendant was manager for his wife in conducting a grocery-store owned by her, and known as the "Hooverized Grocery" at Enterprise, Oregon; that the entire building, in which the store was conducted, was leased by his wife in her own name; that all of the ground floor of the building was occupied by the store except a small portion thereof that had been subleased by defendant's wife to one W. H. Graves, who conducted a meat market therein; that the defendant and his wife resided on the second floor of said building, which consisted of three rooms, used by them as a living-room, bedroom and small storeroom. It also appears that Graves had access to all parts of the building and that in the room referred to as the living-room, he cleaned the tools used for cutting meat, as that was the only place where boiling water could be obtained for that purpose.

It also appears that on December 23, 1921, pursuant to a search-warrant, the sheriff searched the building for intoxicating liquor and found in defendant's living-room and bedroom a copper boiler,

a coil, and also a still for the distillation of spirituous liquor, and a mash barrel which contained small particles of mash, and from its appearance and smell indicated that it had been used but a short time before the search. The sheriff also found, concealed behind an ironing-board in the small storeroom adjoining defendant's bedroom and living-room, five pint bottles of moonshine whisky, and in a catchbasin, in the alley from seventy to eighty feet from the store, he found a quantity of mash. When the whisky was found by the sheriff the defendant asserted that it was not his whisky, that he had no knowledge of its existence or presence there and claimed that it had been placed there by someone else. At the same time Graves claimed that the liquor was his and that he had bought it and placed it there without defendant's knowledge. A short time thereafter Graves was arrested and entered a plea of guilty to a charge of having the whisky in his possession. It also appears that Mrs. Harris, the wife of the defendant, was arrested and tried upon the charge of having the same whisky in her possession, but the record does not disclose whether she was convicted or not.

Defendant contends that because it appears from the undisputed evidence in the case, not only that the defendant himself, but also his wife and Graves had access to the room and could have committed the crime, the state was bound to prove that the defendant was in the actual, conscious possession of the whisky, and having failed to establish that fact, it was error for the court to refuse to direct the jury to acquit the defendant. In order to establish the offense for which the defendant was charged, it was necessary for the state to prove that the defendant.

alone or jointly with others, was unlawfully in possession of the intoxicating liquor charged in the information. It was therefore necessary for the state to prove that the liquor was intoxicating, that the defendant was in possession of it, and that his possession was unlawful.

1. It is a matter within the common knowledge of all men, and courts take judicial notice of the fact, that moonshine whisky is intoxicating and that liquor which does not contain more than one half of 1 per cent of alcohol is not intoxicating, and therefore, within the meaning of the statute, moonshine whisky is an intoxicating liquor *per se,* the possession of which is unlawful unless the party charged with its possession had possession of the liquor on or before February, 1917, or has since acquired it in conformity to the provisions of the statute: *State* v. *Cox,* 91 Or. 518 (179 Pac. 575).

2. The statute, Section 2224—4, Or. L., provides that "it shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away or barter any intoxicating liquor within this state"; etc. In the case of *State* v. *Cox, supra,* this court, in construing this statute, in effect held that it was to be read as if the word "knowingly" had been written into the statute, and that before the defendant could be convicted for a violation of the statute, it was necessary that a criminal intent should be established. From this it follows that before a person can be convicted of being unlawfully in possession of intoxicating liquor, it is necessary that his possession should be a conscious possession and not merely such possession as would arise from having intoxicating liquor placed in his pocket or within his house or upon his premises without his knowledge.

3. But it is not necessary for the state to establish defendant's conscious possession of intoxicating liquor by direct testimony. This may be established by circumstantial evidence, and if the facts or circumstances in the case are such that it is reasonable to infer that the defendant did have such conscious possession, this would be sufficient to sustain his conviction.

In the case of *City of Jackson* v. *Gordon,* 119 Miss. 325 (80 South. 785), the defendant was the proprietor of a pressing-shop. His shop was raided by the police and four bottles of beer were found in the front part of his shop and four bottles under his bed. He testified that he did not own the beer and that he had no knowledge of the fact that it was in his shop at the time it was seized by the officer. The statute of that state provides "that it shall be unlawful for any person * * to have, control or possess * * any of the liquors mentioned," etc. The trial court instructed the jury that they should acquit the defendant unless they believed beyond all reasonable doubt that the liquor in question was in the conscious possession of the defendant, that is, that he knew it was there in the shop and permitted it to remain there. The defendant was acquitted and the city appealed. That court held:

"We think the lower court was correct in its interpretation of the law. The old rule that criminal intent must accompany a crime is still the law, even as to liquors, so far as we have been able to ascertain. There must be actual or constructive intent to do the thing which constitutes the crime; otherwise there is no criminal act. If it can be said that the liquor in this case was in the possession of the defendant merely because it was in his shop, when he did not know it, still such possession, not being

conscious, was not actual and intentional possession, as contemplated by the statute.

"We do not think it was intended by the act to hold a person guilty of the offense of unlawfully having in his possession liquor, where he did not know or was not conscious of the possession, even if by any stretch of reasoning it can be said that a person is in the possession of an article when he does not know it. The proof offered by the defendant, denying knowledge of the possession, presented a question of fact for the determination of the jury; and while such defense may furnish an avenue of escape in such cases, this is only true when the jury believes from the evidence the defendant did not have conscious possession of the liquor."

4. In the instant case the evidence clearly established that the defendant and his wife were in the exclusive, joint occupancy and possession of the room where the liquor was found, and the room itself was a part of their living quarters. Graves was not an occupant of the room, nor did he have any right to go to the room, nor to place anything there without their permission. The evidence also disclosed that the defendant kept or permitted to be kept in his living-room and bedroom a still and all the apparatus necessary to distill intoxicating liquor of the kind and character found. The evidence showed that the defendant was at the time, and prior to the search, living in these rooms, and therefore this apparatus for distilling intoxicating liquor was under his daily and constant observation. Evidence of these facts and circumstances, together with the finding of the whisky, if credited by the jury, was sufficient to establish that defendant was guilty of the crime charged, and therefore it was proper for the court to submit the cause to the jury for its determination.

5. Defendant assigns as error the admission, over the objection and exception of the defendant, of the testimony of the sheriff to the effect that in making the search he found in a locked cupboard in the store, from one to six dozen vanilla wrappers, together with two cases of Folger's vanilla and lemon extracts. The evidence introduced by the defendant disclosed that this extract contained as high as 65 per cent of alcohol. As defined by Section 2224—1, Or. L., intoxicating liquor includes "mixtures or preparations reasonably likely or intended to be used as a beverage, which shall contain in excess of one half of 1 per centum of alcohol by volume." If, as a matter of fact, these extracts were reasonably likely to be used as a beverage and defendant kept these extracts in the store for his own use as a beverage or kept them, intending to sell the extracts to others who would use them as a beverage, then his possession of the extracts was in violation of the statute. Whether the defendant had such unlawful intent was a question of fact for the jury to determine. The testimony of the sheriff, that in making the search he found the extracts and a considerable number of wrappers which had become detached from other bottles not then in the store and which had contained like extracts, was admissible because pertinent upon this question. It was not required under the statute that the information should allege, and the information did not allege, the particular kind of intoxicating liquor the defendant was charged with being in the possession of. Proof of the unlawful possession of intoxicating liquor of any kind, whether whisky, extracts or other spirituous liquor, was admissible in support of the charge, and it was competent for the state to prove defendant's possession

of as many kinds of intoxicating liquor as the defendant, at the time, was in possession of. The fact that the possession of the extracts might be either lawful or unlawful, according to the use the defendant intended to make of the extracts, did not affect the admissibility of the testimony. The state was entitled to prove defendant's possession of the extracts and to show that such possession was unlawful and such proof was competent and admissible in support of the charge against the defendant.

6. Defendant's objection and exception to the introduction of the testimony showing that at the time of the search there was a still and other apparatus used in the distillation of intoxicating liquor on the premises, and that mash was found in the catch-basin, is also without merit. The state was entitled to offer this proof as it tended to explain defendant's possession of the whisky in question. It is possible that the jury may have inferred from defendant's possession of the apparatus used in the distillation of intoxicating liquor that the defendant, by means of this apparatus, distilled the five bottles of whisky found in the room. The unlawful possession of intoxicating liquor is a continuing offense and any testimony tending to show, either that defendant's possession was lawful or that his possession was unlawful, was relevant and material. This testimony is within the rule that "where the intent or motive of a party in performing an act is involved, evidence of facts tending to throw light upon that intent is admissible, even though it tends to show that the party has committed other offenses." *State* v. *Weiss,* 63 Or. 462, 466 (128 Pac. 448); *State* v. *Finch,* 54 Or. 482 (103 Pac. 505).

·7. It is claimed that the court erred in refusing to allow the defendant to show, by cross-examination of Nottingham, a deputy sheriff who assisted in making the search, that he had sworn to three complaints separately charging Graves, the defendant's wife and the defendant, with the possession of the liquor in question. This evidence could only be material for the purpose of showing the interest of the witness. The witness was an officer charged with the enforcement of the law. The fact that the witness swore to a separate complaint charging each of the parties, having access to the place where the liquor was found, with the commission of the crime, was of no more importance than if he had sworn to but one complaint, charging them all jointly with the commission of the offense. Under the facts disclosed by the evidence, proof that the witness separately charged the defendant with the commission of the offense, and did not make a joint charge against them, was wholly immaterial. If the witness had any interest in the prosecution of the defendant other than that of an officer conscientiously performing his duty in the manner provided by law, the defendant was entitled to show such interest, either on cross-examination of the witness or by other evidence. The cross-examination that the defendant was seeking to make, if the court had permitted it to be done, could not, in the nature of things, have developed any interest upon the part of the witness, and therefore, it was proper for the court to exclude it.

It appears that defendant's counsel, on cross-examination, attempted to show by the witness Nottingham that he had previously made contradictory or inconsistent statements to those made on the trial. In such cross-examination, the statements were re-

lated to the witness and his attention was called to the time, place and persons present. The witness partly admitted and partly denied the making of such statements, and while being so cross-examined as to such statements, requested permission to explain the conversation referred to. He was then directed by the district attorney to make the explanation. Thereupon defendant objected to an explanation being made by the witness. This objection was overruled by the court and the explanation was made by the witness. A motion to strike out the answer of the witness explaining the matter was overruled and an exception allowed. Defendant assigns this ruling as error and asserts that the ruling of the court and the making of the explanation by the witness was an interruption of the orderly progress of the trial.

8. The attempted impeachment of the witness was a direct attack upon his testimony. He was therefore entitled to, and it has always been the practice to afford a witness an opportunity to admit, deny or explain the statement thus assailed: 5 Jones' Blue Book of Evidence, § 845. This rule is preserved by statute. Section 864, Or. L., provides that before a witness can be thus impeached "the statements must be related to him, with the circumstances of times, places, and persons present; and he shall be asked whether he has made such statements, and if so, allowed to explain them." The witness was therefore entitled to make the explanation.

9. Whether the witness should have been permitted to make this explanation before the cross-examination was completed or after the cross-examination was terminated was, we think, within the sound judicial discretion of the court. The permission granted to the witness to make the explanation at the time

he was being interrogated as to his previous statements did not injuriously affect any substantial right of the defendant. If the explanation had been deferred until the cross-examination was completed, it is possible that the state would not have availed itself of its right to examine the witness on redirect examination. In that case the witness might have been deprived of any opportunity to make the explanation which, under the statute, he was entitled to make.

10. Graves was called as a witness for the defendant and testified that he bought the five bottles of whisky in question. Defendant's counsel then asked the witness whether he bought the whisky for his own use or for the purpose of selling it. Defendant excepts to a ruling of the court sustaining an objection to this question. Graves at the time was not on trial. The purpose of the proof sought to be established was to show that Graves and not the defendant bought the whisky. The testimony of Graves accomplished that purpose so far as it was possible for his testimony to do. Graves having testified that he himself bought the whisky, it was wholly immaterial whether he bought it for his own use or to sell to another.

11. Defendant contends that the court erred in compelling the witness Graves to testify on direct examination that defendant's wife brought food to him while he was confined in jail. This testimony, unless it tended to show a concert of action between Graves and the defendant, was probably immaterial. But the admission of this testimony, under the circumstances disclosed by the evidence, could not be prejudicial to the defendant as it merely tended to show the friendly relations existing between the parties.

12. It appears that Graves, a witness for the defendant, was, without objection, interrogated on cross-examination by the district attorney about having applied for and secured a change of venue from the Justice Court at Enterprise to the Justice Court at Joseph, in the case where he himself had been charged with the possession of the liquor. On redirect examination defendant's counsel asked the witness his reason for making the application for a change of venue. Upon objection by the district attorney the court declined to permit the witness to answer. The matter was wholly immaterial. The witness had the right to apply for and secure a change of venue and in so doing probably hoped to secure a more favorable trial for himself. But whatever his purpose or motive may have been or what he did in reference thereto was wholly immaterial upon the issues involved in the trial of the defendant. If defendant had objected to the introduction of this testimony, the objection would probably have been sustained by the court, but having permitted the district attorney to go into the matter, without objection upon his part, the defendant was not deprived of any substantial right by the court's refusal, when an objection was made, to permit any further examination upon an immaterial matter.

13. Defendant also objects because the court refused to allow one Cal Long, a witness for the defendant, who did not claim to be present at the alleged sale, to testify that at the time Graves claimed to have purchased the liquor from one Nedrow, Graves informed him that he had purchased the liquor from Nedrow. The testimony offered was purely hearsay and it was properly rejected.

14. The defendant excepted to the following instructions given by the court:

"Defendant in this action is charged with the crime of having intoxicating liquor in his possession. Possession, I instruct you, is the present right or power to control or dispose of the property in the custody of the person in whose care it may be found. It is not necessary that the liquor in question be found upon the person of the defendant, but it is only necessary for the state to prove beyond a reasonable doubt, that the liquor in question, was under the control of the defendant, and if you find beyond a reasonable doubt that the liquor in question was intoxicating liquor, and under the control of the defendant in his home, and the defendant had knowledge of it being in his home, then you must find the defendant guilty as charged.

"I instruct you that possession may be either exclusive or joint with another person, and if you find that defendant did not have the exclusive possession of said property, but that he had a joint possession with some other person or persons, or if you find beyond a reasonable doubt that W. H. Graves was jointly in possession of said liquor with the defendant, and that said liquor was an intoxicating liquor, and that defendant had knowledge that said liquor was placed in his home, then you must find the defendant guilty as charged.

"I instruct you that even though you should find that the liquor in question had been purchased by W. H. Graves and if you should find beyond a reasonable doubt, that said W. H. Graves had delivered said liquor to the defendant or that said W. H. Graves had placed said liquor in the living-rooms of defendant, and that defendant had knowledge of such liquor being in said rooms, and control of said liquor, and you further find that said liquor is an intoxicating liquor, then you must find the defendant guilty as charged.

"It is admitted that the defendant in this case was the manager and in control of the store known as the

Hooverized Grocery Store, and that his wife Estella B. Harris, was the proprietress of said store, and that Barney Harris, the defendant in this case, is the husband of Estella B. Harris, and I instruct you that it is the law that the husband is at the head of the family, and as such has the right to regulate the household, and to exercise the general control of the family affairs, and if you find beyond a reasonable doubt, that the liquor in question was found in the family home, and that said liquor is an intoxicating liquor, and that defendant Barney Harris had knowledge that said liquor was in his home, and that he had control of the same, then you must find the defendant guilty as charged.''

We think that the instructions excepted to were applicable to the facts disclosed by the evidence and correctly stated the law applicable thereto.

Defendant also contends that the court erred in modifying the following instruction requested by the defendant by inserting that portion thereof which we have inclosed in parentheses, and then giving the instruction as so modified:

''I instruct you that the defendant in this case is charged with the unlawful possession of the liquor introduced in evidence. Now the word 'possession' in law signifies the custody of property together with the right of control of the same, and in this case, if you find from the evidence that this liquor was found in one of the rooms of the Harris household, but that W. H. Graves had the right of access to said room and csutody and control of said liquor, (and you further find that the defendant did not know that said liquor was in said room), then you must find the defendant not guilty.''

We think that the instruction requested was not applicable to the facts in the case and that it did not correctly state the law. There was no evidence tending to show that Graves had the custody of the

liquor or that he had it in his care. He claimed that he had bought the liquor from Nedrow and had deposited it in the room without defendant's knowledge. If this was true the defendant was entitled to an acquittal because in that case he could not have had conscious possession of it, and the court so instructed the jury.

The possession of intoxicating liquor, to be unlawful under the statute, must be a conscious possession: *State* v. *Cox, supra; City of Jackson* v. *Gordon, supra.* But the possession may be either actual or constructive: *State* v. *Lee,* 164 N. C. 533 (80 S. E. 405); *State* v. *Ross,* 168 N. C. 130 (83 S. E. 307).

15. If the defendant received the whisky to keep for Graves, knowing it to be intoxicating liquor, or if Graves deposited the whisky in the room with defendant's knowledge and defendant permitted it to remain there, the defendant would be in the unlawful possession of the liquor within the meaning of the statute: *State* v. *Cox, supra; City of Jackson* v. *Gordon, supra; State* v. *Willey,* 7 Boyce (Del.), 441 (108 Atl. 79). If the defendant received the whisky to keep for Graves or if he knew that the whisky had been deposited in the room by Graves and permitted it to remain there, it was the defendant, and not Graves, who had the care and custody of it.

16, 17. However, it was not necessary for the liquor to be the property of the defendant or for the defendant to have the legal right to control it, but it was essential that he should have the power to control it. The evidence disclosed that the five bottles of whisky were concealed in a room and that the room was in the actual possession of the defendant. Graves did not have equal right or facility of access to the room that the defendant had, nor could he

enter the room at all without the permission of the defendant or that of his wife. If the defendant knew that the whisky was in the room he could have ordered Graves to remove it or could have removed it himself. He thus had the power to control the presence or absence of the whisky in the room. Having the power to prevent the whisky from remaining in the room, and being in the actual possession of the room, the defendant was *prima facie* in the possession of the whisky, and if he knew that the whisky was in the room, he was in possession of the whisky within the meaning of the statute. Yet, as the error in the instruction consisted in giving the part requested and not in the modification thereof, and as the defendant induced the court to commit the error, the defendant cannot complain because of such error.

18. Defendant also contends that the court erred in refusing to give other instructions requested by the defendant. We have examined the instructions requested and find that the instructions given cover all of the matters contained in the requested instructions and that the jury was fully and fairly instructed upon all of the points involved, and we are satisfied that there was no error as contended for.

For these reasons the judgment of the lower court will be affirmed.                                    AFFIRMED.