Argued February 1; affirmed March 19; rehearing denied
April 23, 1940

# SMITH *v.* PACIFIC TRUCK EXPRESS

(100 P. (2d) 474)

In Banc.

*James Arthur Powers*, of Portland, for appellant.
*Walter L. Tooze*, of Portland, for respondent.

LUSK, J. The plaintiff, Mabel Smith, was injured while riding on a truck operated by the defendant, Pacific Truck Express. She sued to recover her damages, and the jury returned a verdict for the defendant. The circuit court, on motion of the plaintiff, set aside the verdict and granted a new trial on the ground of error prejudicial to the plaintiff in the exclusion of testimony, and the defendant has appealed. Other questions are raised by the motion for the determination of which a brief statement of the facts is necessary.

Mrs. Smith was the representative of the American Railway Express Agency at Bay City, Tillamook county, Oregon. Her office was located on a street which formed the approach to a dock on Tillamook bay. Along the dock were buildings where fish, crabs and clams were prepared for shipment, the farthermost one, that of the Tillamook Bay Fish Company, being at the bay or west end of the dock, a distance of approximately two-fifths of a mile from the Railway Express office.

The defendant operated trucks between Tillamook, seven miles south of Bay City, and Foss, to the north. It transported express handled by the Railway Express Agency, its own freight, and the mail, under a contract with the United States government. Customarily its truck, on the return trip from Foss to Tillamook in the afternoon, picked up Railway Express Agency shipments of fish, crabs and clams at the Bay City dock and, at times, other merchandise which was brought to the office of the Railway Express Agency.

In the discharge of her duties Mrs. Smith's routine was as follows: She would go to the shippers on the dock sometime before 3 o'clock in the afternoon, obtain the necessary information respecting the character of the day's shipments, names of shipper and consignee, destination, etc., and return to her office where she made up the waybills. She would wait there until the truck came by. Then, she would ride on the truck to the dock, attach shipping tags and copies of the waybills to the boxes, receipt for the shipments and list them in a book known as script, and, after the loading had been completed, return on the truck to her office. There, the driver signed the script, and this constituted her receipt from the defendant for Railway Express Agency shipments. The signing of the script was deferred until the return to the office because at times, while she was absent on the dock, parcels would be left for shipment at the office, which had to be listed on the script sheet along with the others, and also receipted for.

This course of conduct had been pursued by the plaintiff over a period of some five years, and there is uncontradicted evidence that officers of the defendant corporation had knowledge of it.

Mrs. Smith had an automobile which she sometimes drove on her trips between the office and dock, but usually on the second trip she rode on the truck.

The defendant was required to deliver the mail to the post office in Tillamook by 4 o'clock in the afternoon. In order to meet this schedule the truck usually arrived at the Bay City dock about 3:00 p. m. Loading the truck took about fifteen minutes and the trip back to the office another four or five minutes. To cover the distance on foot would take considerably longer.

Mrs. Smith was injured on the afternoon of February 4, 1938, after the truck had been loaded and her duties on the dock in connection with the shipments were done. She and the driver had just entered the cab of the truck, and, according to her testimony, the driver started the vehicle suddenly with a jerk before she had sat down, and she was thrown against a piece of two-by-four at the rear of the seat and sustained injuries to her back.

The plaintiff did not allege in her complaint gross negligence, an intentional injury, or intoxication of the driver of the truck. She alleged, and there is evidence, that on the day of the accident the truck was about twenty minutes late. She claims that by riding on the truck, instead of returning to the office on foot, she saved the defendant's time, helped it to make its schedule, and thereby conferred upon it a substantial benefit, from all of which it is argued that she was taken out of the category of a mere guest in the defendant's vehicle.

■ Before discussing the legal questions presented we again call attention to the proper practice in the preparation of briefs on appeal from an order granting a new trial. The trial judge, as his memorandum opin-

ion in the record discloses, based his decision on what he deemed to be an erroneous ruling sustaining an objection to testimony offered by the plaintiff. The defendant, in its opening brief, has argued that question and no other. The motion for a new trial, however, specified nine alleged errors, and it is incumbent upon the defendant, the appellant here, to show that none of the grounds of the motion is well taken; and, hence, in the interest of an orderly procedure, it should have presented argument in its opening brief upon all the questions raised by the motion. *Zeek v. Bicknell*, 159 Or. 167, 169, 78 P. (2d) 620.

■ Section 55-1209, Oregon Code 1930, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

This court is committed to the view that a person who, in riding in the motor vehicle of another, confers a substantial benefit on the owner or operator of such vehicle is not a guest within the meaning of this enactment even though the person so carried also promotes his own convenience and advantage. *Albrecht v. Safeway Stores, Inc.*, 159 Or. 331, 80 P. (2d) 62; *Haas v. Bates*, 150 Or. 592, 47 P. (2d) 243. The authorities from this and other jurisdictions are cited and reviewed in the Albrecht case, and nothing is to be gained by going over that ground again.

■ It is not contended in the defendant's briefs that the rule of the Albrecht case does not apply here. It

is urged by the plaintiff, however, that the court below erred in not instructing the jury, as it was requested to do, that, as a matter of law, the plaintiff was not subject to the provisions of the guest statute. The defendant contends that that was a question of fact for the jury.

The plaintiff argues that not a social, but a definite business, relationship obtained between the plaintiff and the defendant; that in the prosecution of the business in which they were mutually engaged the time of the defendant was conserved to its substantial gain in the performance of its contract for the carriage of the mail by transporting the plaintiff from the dock to her office; that the fact that her own interest was also served thereby would not alter her status if the defendant took her as a passenger in order to facilitate the dispatch of its business in Bay City.

It is our opinion that the evidence would warrant a finding that the plaintiff was merely the recipient of an accommodation at the hands of the truck driver, and that the sole purpose in transporting her was to aid her in the performance of her duties and the earning of her commissions, or to save her the trouble of walking or the expense of operating her own car. This would be particularly true were it found that the truck was not late on the day of the accident, as some of the evidence indicates, or that there was no valid reason for signing the script at the office instead of on the dock, which was a permissible view. In short, we think that there were conflicts both in material facts directly proven and in inferences that might reasonably be drawn from those and other facts, which would have made it error for the court to have granted plaintiff's request for a peremptory instruction as to her status on the defendant's truck at the time of the accident.

■■ The trial judge declined to give an instruction requested by the plaintiff to the effect that, if a benefit accrued to the defendant from transporting the plaintiff in its truck, she would not be a guest even though she was also benefited; in other words, that, if the parties were mutually benefited, the guest statute would not govern. Since there was evidence tending to show that the transportation served the plaintiff's purposes as well as the defendant's, we think it was error not to give the requested instruction; otherwise, the jury might have thought that the guest statute did not apply unless the sole purpose of the transportation was to benefit the defendant. This is not the law as declared in the Albrecht case, and the point is emphasized by an instruction which told the jury that the plaintiff must prove that she was not "riding in the truck for her own benefit and pleasure and in connection with her own business". We are not in accord with the defendant's suggestion that it was necessary for the plaintiff to allege in her complaint that the transportation was for the mutual benefit of herself and the defendant in order to entitle her to the requested instruction.

The ground on which the motion for a new trial was granted, as stated, was the exclusion by the court of certain evidence offered by the plaintiff. On her cross-examination plaintiff identified a statement taken from her after the accident by one Simonson, who, it would appear, was an adjuster for an insurance company. The statement was in the handwriting of Simonson and signed by the plaintiff, and tended in some measure to contradict the plaintiff's sworn testimony as to the cause of the accident. It was received in evidence and the plaintiff was invited by defendant's

counsel to read it and state whether it accorded with what she had told Simonson. She did so, and testified that, apart from one minor feature regarding the amount she had paid a woman to take care of her after the accident, there was nothing in the statement that should be changed. This part of the examination concluded as follows:

"Q It is all exactly as you gave it to him except you paid that woman two dollars instead of one?
"A Yes."

The defendant's counsel, in open court, acquiesced in the correction.

On re-direct examination the plaintiff was asked by her counsel to relate the circumstances under which the statement was given, and, on objection to the question, plaintiff's counsel informed the court that he wished to show who Mr. Simonson was. (Simonson's identity as an insurance adjuster had theretofore been disclosed to the trial judge in a conference in chambers.) The objection was sustained, and out of the presence of the jury an offer of proof was made to the effect, among other things, that Simonson had told the plaintiff that he had the Pacific Truck Company insurance and the insurance company had sent him to procure her statement. The offer of proof was rejected by the court.

The following then took place before the jury:

"Q (By counsel for plaintiff) In this statement that is offered here I assume, by way of impeachment, this Mr. Simonson has written in here, this statement, speaking of Adams, 'He didn't jerk the truck forward or do anything unusual at all', did you tell Simonson that?"

Objection to the question was sustained by the court and an offer of proof made that the witness would answer that she did not make that statement to Simonson. The following then occurred:

"Q Mrs. Smith, summarizing now, briefly, what is the fact now,—what is the fact as to whether or not that truck started with a sudden jerk when you were in the act of sitting down?

"A It started when I was completely sitting down.

"Q That is, when you were not completely—

"A (interrupting) When I was just in the act of sitting down, that is the way it was reported to Mr. Simonson."

Plaintiff's counsel then directed her to read the statement again "very carefully", and to call attention to anything that was different from what she had told Simonson. In response she testified in substance that she did not tell Simonson that she sat down about the same time as the driver but the driver was seated before she was, and that she told him she was in bed four to six weeks and not four weeks as the statement read. She pointed out no other discrepancies.

The record thus summarized raises two questions. First, did the court err in refusing to permit plaintiff's counsel to inquire into the circumstances of the giving of the statement and so develop the fact that the defendant was protected by insurance? Second, did the court err in denying to plaintiff's counsel the right to ask his client specific questions as to the accuracy of various portions of the statement?

 The rules governing the first question are familiar to the profession. Generally, the fact that the defendant in a case of this kind is protected against loss by a contract of insurance is irrelevant to the issues of negligence and injury, and, being prejudicial in char-

acter, may not be shown. *Fletcher v. Saunders*, 132 Or. 67, 70, 284 P. 276; *Jones v. Sinsheimer*, 107 Or. 491, 494, 214 P. 375; and cases there cited. But issues may develop on the trial which make it proper to divulge that fact. It is always permissible to show the interest or bias of an adverse witness. And, so, when an insurance agent takes the stand for the defense his connection with a company which has insured the defendant, is conducting the defense, and whose money is at stake, may be brought out on cross-examination to affect his credibility. *Davis v. Underdahl*, 140 Or. 242, 249, 13 P. (2d) 362; *Fletcher v. Saunders*, supra; *Kitchel v. Gallagher*, 126 Or. 373, 380, 270 P. 488; *Jones v. Sinsheimer,* supra. And, if the evidence is otherwise relevant, it will not be excluded because the insurance factor is disclosed as an essential part of it. *Parker v. Norton,* 143 Or. 165, 21 P. (2d) 790; *Webb v. Hoover-Guernsey Dairy Company,* 138 Or. 24, 4 P. (2d) 631; *Fletcher v. Saunders,* supra. The many ramifications of a subject which frequently gives rise during the trial of personal injury cases to awkward situations and perplexing questions are treated at length in annotations in 105 A. L. R. 1319; 95 A. L. R. 388; 74 A. L. R. 849; 56 A. L. R. 1418.

The precise question here is this: May a witness who, on cross-examination, has admitted signing an impeaching statement show, on re-direct examination, that the statement was given at the request of, and prepared by, an adjuster for an insurance company which has insured the defendant against liability on account of the alleged injury. The plaintiff argues that such evidence is admissible under the well settled rule which permits a witness to explain prior statements inconsistent with his testimony—a rule which,

in this state, is embodied in a statute: § 9-1912, Oregon Code 1930. See *State v. Harris*, 106 Or. 211, 223, 211 P. 944; 70 C. J. "Witnesses" 1142, § 1332; 6 Jones Commentaries on Evidence, 2d Ed., 4765, § 2413. The rule itself suggests, however, that if evidence proffered under the guise of explanation does not explain anything it should be rejected, particularly if it be of a character likely to arouse the prejudices of a jury. As Professor Wigmore says:

"In accordance with the logical principle of Relevancy, the impeached witness may always endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it." 2 Wigmore on Evidence, 2d Ed. 500, § 1044.

The decisions of the courts reveal nothing out of harmony with that authority. In *Rosenberg v. Mageda*, 251 Mich. 696, 232 N. W. 397, the plaintiff, who could not speak English, was permitted to show what was said to her to induce her to sign a statement, although, in doing so, it was brought out that the statement was procured by an insurance adjuster. In *Wheeler v. F. A. Buck & Co.*, 23 Wash. 679, 63 P. 566, the witness was allowed to explain the circumstances under which a writing was signed by him so as to develop what he had intended to accomplish by signing it. In *Panhandle & S. F. Ry. Co. v. Van Arsdel* (Tex. Civil App.), 247 S. W. 920, the trial court was sustained in its ruling which permitted the plaintiff to testify on re-direct examination that a written statement signed by him was given by him to a claim agent of the railroad company, and that it differed from what the plaintiff actually told the claim agent. The foregoing cases are all cited by the plaintiff.

In *Hodge v. Weinstock, Lubin & Co.*, 109 Cal. App. 393, 293 P. 80, it was held that where the defendant introduced in evidence a picture showing the physical condition of premises where an accident had occurred, the plaintiff who, in good faith, questioned the authenticity of the picture, could inquire on cross-examination who took it, even if it was an insurance adjuster, to show his adverse interest. In *Arizona Cotton Oil Company v. Thompson*, 30 Ariz. 204, 245 P. 673, the plaintiff was permitted to testify that an impeaching statement which he had signed had been taken by an insurance adjuster who had been after him three or four times to get such a statement. The court, on appeal, held that there was no error because the plaintiff was attempting to show that the statement ''was not completely an ingenuous one'', and therefore had the right to prove that it was prepared by one who was interested in the result of the case.

■ The plaintiff places her main reliance upon the following language from *Webb v. Hoover-Guernsey Dairy Co.*, supra:

''When parties interested, either directly or indirectly, in the result of litigation, send their agents to interview witnesses and prepare statements for such witnesses to sign, the jury has not only the right to know who such agents are, but whom such agents represent, when a discrepancy arises between the testimony given by the witness on the stand and the statement prepared by such agent.''

A witness for the plaintiff there was confronted with an impeaching writing signed by her, which contained the statement that the plaintiff had been driving very fast. She denied any recollection of having made that statement, and it was held that there was

no error in admitting evidence that an insurance adjuster had obtained the statement. The decision, therefore, is not inconsistent with the statement of the rule by Wigmore, and its application in the cases to which we have referred. The broad language of the opinion must be understood and applied in the light of the record then before the court.

 Testimony which is not relevant is not admissible, and we are of the opinion that it is not competent to show that an insurance adjuster sought and obtained an impeaching statement from a witness unless in some fashion the integrity or accuracy of the document is challenged. Where no misrepresentations or inducements of any description are asserted, or where it appears that in no substantial particular is there any variance between the writing and what the witness told the person who obtained it, the fact that that person is an insurance adjuster is wholly irrelevant and its admission in evidence can serve no purpose but an improper and illegitimate one. But where the statement is questioned, then an issue arises between the witness sought to be impeached and the person who prepared the writing, for the latter, though he may never appear in the court room, is nevertheless, in a sense, vouching for the accuracy and authenticity of the document. He is, as it were, a mute witness, and the jury have the right to be informed of his interest in the case when weighing the testimony of the witness who attacks his handiwork.

 In the case at bar the plaintiff makes no claim of any misrepresentation, fraud, improper inducement, or even undue insistence on the part of Simonson, the insurance adjuster, who secured the statement from her. The offer of proof made after the court sustained

the objection to the question of plaintiff's counsel designed to elicit from her the circumstances under which the statement was given, is barren of any such suggestion. In one important particular, however, the plaintiff testified that the statement was incorrect. She swore that she did not tell Simonson that she sat down in the truck at the same time as the driver, but that he was seated first. The significance of this lies in the fact that she charges the truck driver with negligence in starting the truck before the plaintiff was seated, an act which he could hardly have performed had they taken their seats at the same time.

A material issue thus was created bearing on the value of the statement as evidence. Testimony showing that an insurance adjuster for the defendant took the statement and wrote it out is relevant to that issue, and the exclusion of such testimony by the court below was error and ground for a new trial. It is perhaps unnecessary to add that the evidence is admissible only for the limited purpose stated.

The second question arising out of plaintiff's re-direct examination is: Did the circuit court err in refusing to permit an answer to the question of plaintiff's counsel directed to a specific portion of the statement? Under § 9-1910, Oregon Code 1930, a witness "may be re-examined as to any new matter upon which he has been examined by the adverse party", and "it has always been the practice to afford a witness an opportunity to admit, deny or explain" an impeaching statement. *State v. Harris,* supra; § 9-1912, *ibid.* These are rights which may not be denied to a litigant. The manner of the examination, however, we believe to be within the control, reasonably exercised, of the trial judge. In view of the fact that the plaintiff, at the instance of

her counsel, was permitted to re-read the statement and to call attention to any discrepancies in it, we are not prepared to say that the circuit court's ruling constituted an abuse of discretion or violated any substantial right of the plaintiff, although we think that the better practice in the generality of cases would permit re-direct examination upon specific portions of such a statement.

The court below instructed the jury, in substance, that if the plaintiff's injuries were caused solely by sitting down on the two-by-four, she assumed the risk incident to riding in the truck. The giving of this instruction was assigned as one of the grounds for a new trial. Assumption of risk was not involved in the case. The plaintiff did not assume the risk of injury caused by the negligence pleaded. But the instruction was harmless, for its effect was merely to tell the jury that if the manner in which the seat of the truck was built, and nothing else, was the cause of her injury, she could not recover. This was obviously so.

Because the question may arise on another trial, we here notice briefly another alleged error of the circuit court dwelt upon by counsel for plaintiff in argument, although not made a ground for the motion for a new trial. A medical witness for the plaintiff testified that two X-ray pictures received in evidence had been marred in the mail when they were returned to him from San Francisco. In that connection he spoke of ''somebody down there (in San Francisco) with the insurance company''. This statement was made the basis for a motion for a mistrial by the defendant, which was denied on the ground that it was an inadvertence of the witness, but the trial judge expressed the opinion that the reference to the insurance company

was improper. The plaintiff now insists on the right to develop the matter of insurance in this connection. We have examined the record relating to this incident and are in entire accord with the view expressed by the trial judge. There is nothing to indicate malicious marring of the films by any one, and the testimony, if admitted, could serve only one purpose, namely, to be used in argument as a means of exciting the hostility of the jury against the insurance company and so prejudicing their verdict.

As herein shown, error prejudicial to the rights of the plaintiff was committed on the trial, and the order of the circuit court setting aside the verdict and granting a new trial is, therefore, affirmed.

BEAN, J., not sitting.